ROTHSCHILD et al. v. FRANK et al.

(Supreme Court, Appellate Division, First Department. February 19, 1897.)

1. PRINCIPAL AND SURETY—LIABILITY OF SURETY.
    The surety on the bond of a trustee is liable thereon where the bond was conditioned for the faithful performance of the trust, which was evidenced by a certificate of the trustee reciting that he held certain moneys in trust for the beneficiaries, and that such moneys were invested in mortgages on realty, and the certificate was attached to, and made a part of, the bond which was given in consideration of forbearance to sue the trustee, though at the time the surety executed the bond neither he nor the beneficiaries knew that the moneys had been misappropriated by the trustee. 39 N. Y. Supp. 54, reversed.

2. BONDS—CONDITIONS NOT LIMITED IN TERMS.
    A bond conditioned for the faithful discharge by a trustee of his duties, and for an accounting of all moneys received by him under the trust, which was evidenced by a certificate of the trustee attached to, and made a part of, the bond, and which recited that the trustee held certain moneys in trust for the beneficiaries, and that such moneys were invested in mortgages on realty, is not conditioned for an accounting for such moneys only as were invested in the mortgages described in the certificate, but for all moneys received by the trustee under the trust.

Appeal from trial term, New York county.

Action by Minnie Rothschild, and Edna Rothschild, an infant, by Joseph B. Thorman, her guardian ad litem, against Herman Frank and Moritz Brockman on a bond. There was a judgment in favor of defendant Moritz Brockman (39 N. Y. Supp. 54), and plaintiffs appeal. Reversed.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, WILLIAMS, and PATTERSON, JJ.

William H. Law, for appellants.
Emanuel J. Meyers, for respondents.

WILLIAMS, J. One Clara Feldman, of New Haven, Conn., prior to her death, which occurred August 28, 1887, delivered to the defendant Herman Frank, a lawyer of New York city, various sums of money, aggregating $4,875, in trust, for the purposes expressed in the certificate hereinafter set forth. On September 26, 1887, Her-

man Frank made and delivered to the plaintiffs the following certificate, viz.:

"I, Herman Frank, attorney at law in the city of New York, do hereby certify and declare that during the lifetime of Clara Feldman, late deceased, wife of Louis Feldman, of New Haven, Connecticut, there was intrusted to me by said Clara Feldman various sums of money belonging to her, which up to the time of her death, at her request, I kept invested for her on bonds and mortgages; that some days prior to her death she gave me the same in trust for the purposes hereafter specified, and requested me to keep the same invested on interest bearing securities, and to pay the income thereof to Minnie Rothschild, wife of Louis Rothschild, of New Haven, Connecticut, during her lifetime, and up to the time her daughter, Edna, should marry, at which the whole of said principal sums should be paid to said Minnie and Edna Rothschild, to be divided among them share and share alike. And I do further certify and declare that said various amounts of money so intrusted to me at the time of the death of said Clara Feldman amounted to $4,875, which I have at present invested on bond and mortgage on two pieces of property in Brooklyn, to wit, on premises corner of Plymouth and Gold streets, on which there are due $1,500, and on premises in Duffield street, in the city of Brooklyn, on which there are due $3,500; said mortgage bearing interest 5 per cent. per annum, payable semiannually in January and July of each year.

"Dated New York, September 25, 1887.

"[Signed]                                         Herman Frank."

The Minnie Rothschild and Edna Rothschild named in this certificate are the plaintiffs in this action. Minnie Rothschild was the foster daughter of Clara Feldman, and Edna Rothschild was her daughter. Edna is an infant now, and has not married. Herman Frank paid the interest on this fund to Minnie Rothschild down to January 1, 1895, but has not paid any interest since, and the whole principal of the fund remains unpaid.

In 1894 the Rothschilds, husband and wife, were not satisfied to have the fund in Mr. Frank's hands under the certificate without some security, and Mr. Rothschild called upon Mr. Frank several times, and asked for a bond to secure the performance of the trust. Mr. Frank promised from time to time to give a bond. He did not do so, however, and the matter was placed in the hands of the Rothschilds' lawyer in New Haven, Conn. This lawyer had some communication with Mr. Frank, and finally placed the matter in the hands of a lawyer in New York city. This latter lawyer called upon Mr. Frank in June, 1894, and asked him to raise the money or give a satisfactory bond, and gave him to understand that, if a bond was not given, legal proceedings would be taken against him. Mr. Frank called upon the defendant Brockman, and asked him to sign the bond as surety, and told him the bond did not amount to anything at all; that it was perfectly secured; that he had the money for a woman in New Haven; that he had two bonds and mortgages in Brooklyn, and wanted to give them a paper; that it was only a matter of form; that everything was all right. and he (Brockman) need not fear at all. The bond was executed and delivered to the New York lawyer, who sent it to the New Haven lawyer, and it was given to the Rothschilds. The bond was as follows, viz.:

"Know all men by these presents, that I, Herman Frank, of number 156 East 116th street, in the city of New York, and Moritz Brockman, of number 354 East 69th street, in the city of New York, are held and firmly bound unto Minnie Rothschild, wife of Louis Rothschild, of the city of New Haven, state of Con-

necticut, and to Edna Rothschild, infant daughter of said Minnie and Louis Rothschild, in the sum of five thousand dollars, lawful money of the United States, to be paid to said Minnie and Edna Rothschild, their and each of their executors, administrators, and assigns; to which payment well and truly to be made we bind ourselves, our heirs, executors, and administrators, jointly and severally, firmly by these presents. Sealed with our seals. Dated the 28th day of June, 1894.

"The condition of this obligation is such that if the above-bounden Herman Frank shall and will faithfully in all things discharge his duties as trustee under the trust referred to and described in the certificate of the above-bounden Herman Frank, a copy of which is hereto annexed, marked 'Schedule A,' and render a true and just account of all moneys and property received by him and of the application thereof, then this obligation to be void; otherwise to remain in full force and virtue.        Herman Frank. [L. S.]

"Moritz Brockman. [L. S.]

"In presence of Arthur Rothschild."

Annexed to the bond is a copy of the certificate hereinbefore set out. The Rothschilds children had no communication whatever with the defendant Brockman during the negotiations for the giving of the bond, nor did either the New Haven or the New York lawyer, employed by them in the matter. It was conceded on the trial that the moneys received by Mr. Frank from Clara Feldman in her lifetime were not invested by him in bonds and mortgages as stated in the certificate, and such bonds and mortgages never had any existence in fact. Apparently Mr. Frank has absconded, and the trust fund is lost to the beneficiaries, unless they can enforce this bond against the surety, the defendant Brockman. The court based the decision upon the proposition that there was no consideration for the giving of the bond, and that it was procured by the fraud of Mr. Frank, and under a mutual mistake of fact between the beneficiaries and the surety, Brockman. We think, under the proofs, it should have been found there was sufficient consideration for the giving of the bond. It was under seal, and, in the absence of any other evidence, a good consideration would be presumed, from the fact that it was an instrument under seal. The defendant Brockman had, therefore, the burden of overcoming this presumption. He did give proofs that he received no consideration for executing the bond, but that was not enough. The nature of his undertaking was a suretyship for the principal, Mr. Frank. Ordinarily no consideration would go directly to the surety. The consideration here claimed to exist was for bearance to take proceedings against Mr. Frank, the principal, to procure an accounting as to the trust fund, and security for its payment as it should become due and payable to the beneficiaries in the future. Now, bearing in mind that the question was not quite whether the plaintiffs affirmatively established such a consideration, but whether there was sufficient evidence given on the trial to overcome the presumption of consideration arising from the fact that the instrument was under seal, what appears in this case? There was no dispute as to the fund having been received by Mr. Frank under the trust stated in the certificate made and delivered to the beneficiaries; there was no dispute as to the amount of such trust fund; there is no dispute but that the beneficiaries had doubt as to the safety of this fund in the summer of 1894, and that they called upon Mr. Frank, by themselves and their attorneys, and requested

him to pay over the moneys or give security for its performance by
him of the trust; there was no doubt that Mr. Frank was given to
understand that unless he paid the moneys over, or gave such se-
curity, proceedings would be commenced against him to obtain the
money or some kind of security; there was no doubt but that he gave
the bond to avoid such proceedings, and to obtain forbearance as
to an accounting for the trust fund, and the payment of the same,
until it became payable, pursuant to the terms of the trust. As a
matter of fact, he had evidently misappropriated the whole trust fund
at the time the bond was given, and he knew it, though the bene-
ficiaries had no knowledge upon the subject. Upon the real facts
then existing Mr. Frank was certainly liable to an action for an ac-
counting, and a recovery could have been had against him in tort,
for the misappropriation of the trust fund. But he was also liable
to an action, even upon the condition of things, or the beneficiaries
understood it. They did not know where the fund was, whether Mr.
Frank still had it, or how it was invested, if at all. They were upon
this state of facts entitled to maintain an action against him for
an accounting as to the trust fund, wherein he might be compelled
to disclose the condition of the fund and how and where it was in-
vested, whether in his own name or in his name as trustee. If the
fund had been misappropriated, they were entitled to a judgment
against him on account of such misappropriation. If it was invested
in his own name, they were entitled to have it adjudicated that the
securities were trust securities, so as to protect the fund against
any future misappropriation by a transfer of the securities or pro-
ceeds thereof to bona fide holders who should take without knowl-
edge or notice of the trust. If the securities were taken in his name
as trustee, they were entitled still to have the nature of the trust
adjudicated, so as to protect the fund in the future. Especially would
such relief in an action for such accounting be proper, if Mr. Frank
was himself insolvent, or of insufficient financial ability to respond to
the beneficiaries for the trust fund, in case of any misappropriation
thereof. So that, in any view of the matter, Mr. Frank was liable to
an action at the suit of the beneficiaries at the time the bond was
required of him and was given. The beneficiaries forbore and post-
poned the bringing of such action by reason of the giving of the
bond, under an implied promise to so forbear, until the interest and
principal of the fund should become payable under the terms of the
trust, and such forbearance and postponement of such action was a
sufficient consideration to support the bond. Certainly the evidence
bearing upon this question was not sufficient to overcome the pre-
sumption of consideration arising from the fact that the instrument
was under seal, and to establish the absence of such consideration.
In Strong v. Sheffield, 144 N. Y. 392, 39 N. E. 330, it was said by An-
drews, C. J.:

"There is no doubt that an agreement by the creditor to forbear the collection
of a debt presently due is a good consideration for an absolute or conditional
promise of a third person to pay the debt, or for any obligation he may assume
in respect thereto. If he is requested by his debtor to extend the time, and a third
person undertakes in consideration of forbearance being given to become liable

as surety or otherwise, and the creditor does in fact forbear in reliance upon the undertaking, although he enters into no enforceable agreement to do so, his acquiescence in the request, and an actual forbearance in consequence thereof for a reasonable time, furnishes a good consideration for the collateral undertaking. In other words, a request followed by performance is sufficient, and mutual promises at the time are not essential, unless it was the understanding that the promisor was not to be bound, except on condition that the other party entered into an immediate and reciprocal obligation to do the thing requested. * * * The general rule is clearly, and in the main accurately, stated in Forth v. Stanton, 1 Saund. 210, note c. The learned reporter says: 'And, in all cases of forbearance to sue, such forbearance must be either absolute, or for a definite time, or for a reasonable time; forbearance for a little or for some time is not sufficient. The only qualification to be made is that, in the absence of a specified time, a reasonable time is held to be intended.' "

The principle here stated is applicable to the facts in the present case; and within this rule it could not be found as matter of fact, in view of the evidence in this case, that there was no consideration for this bond. As to the fraud practiced upon the surety or the principal, Mr. Frank, there can be no doubt, in view of the surety's uncontradicted evidence, but the beneficiaries were not parties to such fraud, and that the fraud was in no way imputable to them, and such fraud could not, therefore, operate to invalidate the bond as to them. Nor can it be said that the bond was given under any mutual mistake as to the facts between the beneficiaries and the surety. The beneficiaries did not know where the fund was or how it was invested. They were ignorant upon the subject, and proposed by action to find out about it, unless security for the performance of the trust was given by Mr. Frank. The bond was given to avoid such action. They took the bond, not under a mistake, but in ignorance of the facts, and the bond cannot be avoided by the surety upon any theory that it was given under a mutual mistake as to the facts. Nor can it be said that the bond was given merely to secure moneys actually invested in the bonds and mortgages described in the certificate. The condition of the bond was for the faithful performance by Mr. Frank of the terms of the trust, and the certificate was annexed and referred to for a statement of the terms of such trust, and the condition was, further, that Mr. Frank should render a true and just account of all moneys and property received by him and the application thereof. It cannot fairly be said that the condition of of the bond required Mr. Frank to account for such moneys only as were invested in the bonds and mortgages described in the certificate, because the condition was not so limited, but was general in its terms, and carried all moneys and property received by Mr. Frank under the trust agreement with Clara Feldman, who delivered to him the money and created the trust. There was no doubt but that the condition of the bond was broken, and the plaintiffs were therefore entitled to maintain the action and recover the penalty of the bond. Our conclusion is that the judgment was improperly ordered, and that it should be reversed, and a new trial ordered, with costs to the appellant to abide the event. All concur.